Omid E. Khalifeh, SBN 267340
Ariana Santoro, SBN 300767
**OMNI LEGAL GROUP**
2029 Century Park E, Suite 438
Los Angeles, California 90067
Phone:      310.276.6664
Facsimile:  310.305.1550
omid@omnilg.com
ariana@omnilg.com

Attorneys for Plaintiff,
Baddieville, Inc.

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BADDIEVILLE, INC., a California corporation;<br><br>Plaintiff,<br><br>vs.<br><br>LEUR BADDIEVILLE, INC., a New Jersey corporation; JENNIFER ALMONTE TORRES, an individual;<br><br>Defendants. | Case No.: 2:23-cv-00070<br><br>**PLAINTIFF'S COMPLAINT FOR:**<br><br>**1) TRADEMARK INFRINGEMENT;**<br>**2) UNFAIR COMPETITION; AND**<br>**3) TRADEMARK DILLUTION**<br><br><br>**JURY TRIAL DEMAND** |

PLAINTIFF BADDIEVILLE, INC., a California corporation, doing business as BADDIEVILLE ("Plaintiff" or "Baddieville") hereby files this Complaint against DEFENDANTS LEUR BADDIEVILLE, INC., a New Jersey corporation ("Leur"), and JENNIFER ALMONTE TORRES, an individual (collectively, "Defendants"), and alleges as follows:

## SUMMARY OF THE ACTION

1. The present action was necessitated by the deliberate misappropriation of intellectual property rights ascribed to Plaintiff's distinct and world-renowned mark as part of a scheme to mislead consumers and cause brand confusion. Since as early as 2012, Plaintiff has been continuously providing a well-regarded line of clothing and accessories under the Mark "BADDIEVILLE", for which Plaintiff has filed several applications for federal registration, one of which has already undergone examination and been approved for publication. *See* **EXHIBIT A**. Through extensive promotion and use, the Mark has become exclusively associated with Plaintiff's goods and services and represents enormous goodwill.

2. Long after Plaintiff began using the Mark whose success and notoriety Defendants had been tracking through social media and other channels, Defendant opened a "beauty & nail bar" under the confusingly similar name "LEUR BADDIEVILLE" (the "Infringing Mark"), which loosely translates to THEIR BADDIEVILLE, with the intent to trade on the hard-earned goodwill ascribed the BADDIEVILLE name through years of effort and expense. *See* **EXHIBIT B**. Using the Infringing Mark, Defendants target the same consumers that Plaintiff has serviced for over ten years.

3. As a result of Defendants' wrongful behavior, numerous consumers have been and are likely to be mistaken, deceived, or confused into believing there exists an association between Defendants and Plaintiff. In this way, Defendants have infringed and continue to infringe upon Plaintiff's intellectual property rights. Defendants have also engaged in and intend to continue engaging in unfair competition.

4. This is an action for willful trademark infringement, unfair competition, and trademark dilution under Section 43 of the Lanham Act, 15 U.S.C. § 1114(1), 1125(a), and 1125(c).

## PARTIES

5. Plaintiff is now, and at all times relevant herein was, a California corporation, having a principal place of business at 20841 Prairie Street, Chatsworth CA 91311.

6. Plaintiff is informed and believes, and on that basis alleges, that Defendant Leur Baddieville Inc., is a New Jersey corporation having a principal place of business at 488 Hamilton St. Unit 2-3, Somerset NJ 08873.

7. Plaintiff is informed and believes, and on that basis alleges, that Defendant Jennifer Almonte Torres, is an individual residing in Somerset, New Jersey.

8. Plaintiff is informed and believes, and on that basis alleges, that Defendant Jennifer Almonte Torres is responsible for controlling and directing the activities of Leur Baddieville Inc.

9. Plaintiff is informed and believes, and on that basis alleges, that Defendants are responsible for their acts and for their conduct, which are the true legal causes of the damages herein alleged.

10. Plaintiff is informed and believes, and on that basis alleges, that Defendants directed their infringing activities towards the state of California with the knowledge that Plaintiff is based in and operates out of California.

## JURISDICTION AND VENUE

11. This is an action for trademark infringement, unfair competition, and trademark dilution arising under the trademark laws of the United States, Title 15, United States Code. Jurisdiction as to these claims is conferred on this Court by 28 U.S.C. §§ 1331, 1338(a) and (b).

12. This Court has personal jurisdiction over Defendants because the acts complained of herein were committed in this District, within the jurisdiction of this Court. Defendants have transacted business by promoting and selling its goods

and/or services to the public under its infringing mark. Defendants have engaged in substantial activity within California and this judicial district and have had substantial contacts here, therefore having purposefully availed themselves of the privilege of conducting activities in the forum. Defendants have caused injury to Plaintiff within California and within this judicial district.

13. Venue is proper in the Central District of California under 28 U.S.C. § 1391(b) and (c) in that substantial injury occurred and continues to occur in this District. Defendants may be found or transacts business in this district and a substantial part of the events giving rise to Plaintiff's claims occurred and are continuing to occur in this district.

## FACTUAL BACKGROUND

14. Plaintiff owns a world-renowned brand that services women of different ages by providing a variety of quality clothing and accessory items at competitive prices. Plaintiff is the proprietor of www.baddieville.com and has been in business for more than ten (10) years while continually expanding their product and service offerings to meet the needs of their growing customer base. In 2019, Baddieville, Inc. was incorporated under the laws of California.

15. Plaintiff possesses intellectual property rights in and to its distinctive brand. Indeed, Plaintiff has filed several applications for federal registration of the mark "BADDIEVILLE" (the "Mark"), Trademark Serial Nos. 90762357, 80762332, 90762306, 90762299, and 90762294. *See* **EXHIBIT A**. Application No. 90762294 has already undergone examination and been approved for publication by the USPTO. *See Id.* Further, the Mark has acquired strong common law rights via its extensive and continuous use in commerce for at least the past ten (10) years. Thus, Plaintiff possesses intellectual property rights in and to its distinctive brand.

16. Plaintiff advertises and markets its company via a number of channels, including its website and social media networks. Plaintiff's Instagram® has amassed

an expansive following of 1.1 million individuals, thereby demonstrating the extent of consumer recognition of Plaintiff's Mark. *See* **EXHIBIT C**. Among Plaintiff's many Instagram® followers is Defendant Jennifer Almonte Torres, under the account "nailsbyyjenn__". *See* **EXHBIT D.**

17. As a result of its success, as well as its marketing efforts, consumers have come to associate the term BADDIEVILLE exclusively with Plaintiff. As such, Plaintiff's Mark represents enormous goodwill.

18. Years after Plaintiff had begun using its' renowned mark in commerce and Defendant had witnessed their success by following Plaintiff on Social Media, Defendant expressed an intention to open a "beauty & nail bar" under the confusingly similar name "LEUR BADDIEVILLE". *See* **EXHIBIT B**. As of December 15, 2022, "LEUR BADDIEVILLE Nails & Beauty Bar" is open to the public. *See Id.* Defendants will thus reap the benefits of Plaintiff's reputation and goodwill based on this consumer confusion, to Plaintiff's detriment.

19. The Infringing Mark "LEUR BADDIEVILLE" is highly similar in appearance to Plaintiff's Mark. The prominent portion of the mark is identical in sound, spelling and commercial appearance since Defendant's merely added a single word, that loosely translates from French to "their." The products and services offered under the Infringing Mark are related and targeted at the same female consumer base. As such, there exists a significant likelihood of consumer confusion with Defendant's target demographic being likely to conclude Defendant's goods and/or services are endorsed, approved, sponsored by, affiliated, connected or associated with Plaintiff.

20. Defendant's continued use of the confusingly similar Infringing Mark in commerce violates Plaintiff's valuable intellectual property rights in the Mark, and Defendant's knowing, intentional, willful, and malicious use of this Infringing Mark is damaging to Plaintiff and Plaintiff's property.

21. Defendants have used the Infringing Mark to unfairly usurp and

1 capitalize on the value and goodwill of Plaintiff's Mark. Defendants are and were aware of Plaintiff's strong trademark rights and reputation in the marketplace, but nevertheless, use the Infringing Mark to profit from the goodwill associated with Plaintiff's Mark.

22. Defendants have intentionally and knowingly capitalized off of confusion between Plaintiff's Mark and Defendant's Infringing Mark, including by providing goods and/or services to the same consumers as Plaintiff's goods and/or services, as described above.

23. Plaintiff's interest in protecting its intellectual property rights and its products and/or services from consumer confusion outweighs any harm to Defendants. The public interest is best served by granting Plaintiff's requested relief against Defendants.

24. On information and belief, Defendant Jennifer Almonte Torres is the owner, director, incorporator, and agent for service of process of Leur Baddieville, Inc. Plaintiff further alleges on information and belief that at all times relevant hereto, Defendant Jennifer Almonte Torres is responsible for controlling and directing the activities and business affairs of Leur Baddieville, Inc. Plaintiff further alleges on information and belief that at all time relevant hereto, Plaintiff Jennifer Almonte Torres had and have exercised complete control over Leur Baddieville, Inc.

25. On information and belief, at all times relevant hereto, Defendant Torres had a personal material financial interest in Leur Baddieville, Inc., and Defendant Torres engaged in self-dealing transactions with Leur Baddieville, Inc., for her own personal benefit.

26. On information and belief, there exists and at all times relevant herein has existed, a unity of interest and ownership between Defendant Torres and Leur Baddieville, Inc., such that any individuality and separateness between Defendant Torres and Leur Baddieville, Inc. have ceased, and Leur Baddieville, Inc. is nothing more than a shell entity acting as the alter ego of Defendant Torres.

27. On information and belief, adherence to the fiction of the separate existence of Defendant Torres, on the one hand, and Leur Baddieville, Inc., on the other, as distinct from one another would permit an abuse of the corporate privilege and would sanction fraud or promote injustice.

28. On information and belief, Defendant Torres utilized the corporate form of Leur Baddieville, Inc. to perpetrate a fraud, circumvent statutory law, and accomplish a wrongful and inequitable purpose. In such circumstances, this Court should ignore the corporate entity, under the alter ego doctrine, and deem Leur Baddieville, Inc.'s acts to be those of persons or organizations (namely, Defendant Torres) actually controlling the corporation.

29. Defendants have had actual knowledge of Plaintiff's existence and intellectual property rights, including those in and to its Mark, as evidenced by Defendant Torres' following of Plaintiff's brand on social media. This knowledge is further evidenced by Defendants' copying of the Mark.

30. Determined to mislead consumers, Defendants have adopted confusingly similar Infringing Marks. Indeed, by advertising and offering for sale goods and services under a highly similar Infringing Mark, Defendants have been and continue to trade off Plaintiff's goodwill. Consumers are likely to be confused, mistaken, and/or deceived in this way. Additionally, Defendants' quality control standards are unknown to Plaintiff but, at a minimum, Plaintiff lacks the ability to control such standards. As such, Defendants' conduct holds a great potential to harm Plaintiff's goodwill and diminish the value of Plaintiff's trademark.

**CEASE AND DESIST DEMANDS**

31. On or around September 30, 2022, Plaintiff, through counsel, sent a letter that informed Defendants of their infringement and demanded that Defendants cease and desist further infringement. *See* **EXHIBIT E** for a true and correct copy of that letter, which was transmitted via United States Postal Service Priority Mail.

32. Because Plaintiff's September 30, 2022 letter was successfully transmitted and did not produce any indication of a lack of transmittal, Plaintiff is informed and believes, and on that basis alleges, that Defendants received Plaintiff's September 30, 2022 communication.

33. Defendant's infringing activity persisted despite being warned of Plaintiff's superior rights. Thus, in an effort to obviate the need for protracted litigation, on or around October 20, 2022, Plaintiff, through counsel, reiterated its demands of September 30, 2022 and attached the cease and desist letter in an email addressed to Defendant. *See* **EXHIBIT F**.

34. Plaintiff is informed and believes, and on that basis alleges, that at least on or before September 30, 2022, Defendants had actual notice of Plaintiff's intellectual property rights. Defendants' use and infringement is therefore willful.

35. As of the current date, no response to Plaintiff's September 30, 2022 and October 20, 2022 letters have been received.

36. Defendants' Infringing use of the Mark was, and continues to be, marketed and advertised in a manner that infringes Plaintiff's Mark. Defendants' infringement and other improper conduct has and continues to cause substantial damage and irreparable harm to Plaintiff, unless restrained by this court.

## FIRST CLAIM FOR RELIEF

**Federal Trademark Infringement Under 15 U.S.C. § 1125(a) – Against All Defendants**

37. Plaintiff hereby restates and realleges the allegations set forth in paragraphs 1 through 36 above and incorporates them by reference.

38. Plaintiff's Mark has been extensively and continuously used in commerce since at least as early as 2012 in connection with its products and services. As a result of Plaintiff's extensive promotion and use, Plaintiff's Mark is recognized as famous and distinctive, and is identified by the purchasing public.

39. Defendants had actual and constructive knowledge of Plaintiff's ownership of and rights in its pending federal trademark applications prior to Defendants' infringing use of the confusingly similar Infringing Marks, "LEUR BADDIEVILLE."

40. Notwithstanding Plaintiff's pre-existing use and valid and enforceable rights in the Mark, Defendants' have used the Infringing Mark, without Plaintiff's consent, in connection with the promotion and operation of a business establishment providing and offering for sale its services in connection therewith.

41. Consumers are likely to confuse Defendants' Infringing Mark with Plaintiff's mark. There is a high degree of similarity between Plaintiff's Mark "BADDIEVILLE" and Defendants' mark "LEUR BADDIEVILLE". Further, Defendants offer goods and services under the Infringing Marks in highly related channels of trade, servicing the same demographic as those in which legitimate goods and services are offered under Plaintiff's Mark.

42. Defendants' infringing use of marks confusingly similar to Plaintiff's Mark is likely to cause, and has caused, confusion, mistake, or deception as to the affiliation, connection, or association of the Infringing Mark with Plaintiff's Mark and legitimate business, in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

43. Furthermore, Defendants' use of the Infringing Mark violates Plaintiff's common law trademark rights in that it creates a false association between Plaintiff's products and/or services, and Defendants' company and products and/or services.

44. Defendants' actions constitute knowing, deliberate, and willful infringement of Plaintiff's Mark. The knowing and intentional nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a) entitling Plaintiff to recover additional treble damages and reasonable attorneys' fees.

45. Defendants have implicitly expressed intent to continue the infringing use with full knowledge of Plaintiff's superior rights, and with full knowledge that Defendant's infringing use of Plaintiff's Mark was intended to or was likely to cause confusion, mistake and/or deception.

46. As a result of Defendants' infringement, Plaintiff has suffered substantial damages, as well as the continuing loss of the goodwill and reputation established by Plaintiff in its Mark. This continuing loss of goodwill cannot be properly calculated and thus, constitutes irreparable harm and an injury for which Plaintiff has no adequate remedy at law. Plaintiff will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

## SECOND CLAIM FOR RELIEF

### Federal Unfair Competition Under 15 U.S.C. § 1125(a) – Against All Defendants

47. Plaintiff hereby restates and realleges the allegations set forth in paragraphs 1 through 46 above and incorporates them by reference.

48. Defendants have deliberately and willfully attempted to trade on Plaintiff's hard-earned goodwill in its trademark and the reputation established by Plaintiff in connection with its products and services.

49. Defendants' unauthorized and tortious conduct has also deprived and will continue to deprive Plaintiff of the ability to control the consumer perception of its products offered under Plaintiff's Mark, placing the valuable reputation and goodwill of Plaintiff in the hands of Defendants.

50. Defendants' conduct is likely to cause confusion, mistake or deception as to the affiliation, connection or association of Defendants with Plaintiff, and as to the origin, sponsorship or approval of Defendants and their products and services, in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1).

51. Defendants had direct and full knowledge of Plaintiff's prior use of and

rights in its Mark before the acts complained of herein. The knowing, intentional and willful nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a).

52. As a result of Defendants' aforesaid conduct, Plaintiff has suffered commercial damage, as well as the continuing loss of the goodwill and reputation established by Plaintiff in its Mark. This continuing loss of goodwill cannot be properly calculated and thus, constitutes irreparable harm and an injury for which Plaintiff has no adequate remedy at law. Plaintiff will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

## THIRD CLAIM FOR RELIEF

**Trademark Dilution Under 15 U.S.C. §1125(c) - Against All Defendants**

53. Plaintiff hereby restates and realleges the allegations set forth in paragraphs 1 through 52 above and incorporates them by reference.

54. Plaintiff's BADDIEVILLE mark is distinctive and famous within the meaning of the Lanham Act.

55. Upon information and belief, Defendants' infringing actions began long after Plaintiff's BADDIEVILLE mark became famous, and Defendants acted knowingly, deliberately, and willfully with the intent to trade on Plaintiff's reputation and to dilute or tarnish Plaintiff's BADDIEVILLE Mark. Defendant's conduct is willful, wanton, and egregious.

56. The acts alleged herein constitute a willful violation of Section 43(c) of the Lanham Act, 15 U.S.C. Sec 1125(c).

57. As a result of Defendants' aforesaid conduct, Plaintiff has suffered commercial damage, as well as the continuing loss of the goodwill and reputation established by Plaintiff in its trademark. This continuing loss of goodwill cannot be properly calculated and thus, constitutes irreparable harm and an injury for which Plaintiff has no adequate remedy at law. Plaintiff will continue to suffer irreparable

harm unless this Court enjoins Defendants' conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for judgment against Defendants as follows:

A. Entry of an order finding that Defendants have infringed Plaintiff's intellectual property rights and unfairly competed with Plaintiff in violation of 15 U.S.C. § 1125(a) and 1125(c).

B. Entry of an order (on a preliminary and permanent basis) requiring that all Defendants and their officers, agents, servants, employees, owners and representatives, and all other persons, firms or corporations in active concert or participation with them, be enjoined and restrained from:

    1. Using any of Plaintiff's trademarks, or any other trademark that is confusingly similar to Plaintiff's trademark or gives rise to a likelihood of confusion, mistake or deception with respect to Plaintiff's trademarks;

    2. Doing any act or thing likely to induce the mistaken belief that Defendants or its products and/or services or business, is in any way approved by or affiliated, connected, or associated with Plaintiff or Plaintiff's goods and/or services; and

    3. Unfairly competing with Plaintiff in any manner whatsoever or causing injury to the business reputation of Plaintiff;

    4. Diluting Plaintiff's Mark in any manner whatsoever or causing injury to the business reputation of Plaintiff;

C. Entry of an order requiring Defendants and their agents, servants, and employees and all persons acting in concert with or for them, pursuant to 15 U.S.C. § 1116, to file with this Court and serve upon Plaintiff, within thirty (30) days after entry of the injunction, a written report under oath describing in detail the manner and form in which Defendants have complied with the injunction, including ceasing

all offering of goods and services under Plaintiff's trademark;

D. Entry of an order pursuant to 15 U.S.C. §§ 1118 and 1125(c) requiring Defendants to deliver up for destruction all infringing materials, including all storage media, Internet webpages/scripts/html code, advertisements, brochures, current inventory of products, articles, packages, wrappers, products, displays, labels, signs, vehicle displays or signs, circulars, kits, packaging, letterhead, business cards, promotional items, clothing, literature, sales aids, receptacles, templates or other matter in the possession, custody, or under the control of Defendants or its agents bearing Plaintiff's trademark or any mark that is confusingly similar to or a colorable imitation of the trademark;

E. An accounting against Defendants, and an award of monetary relief to Plaintiff in an amount to be fixed by the Court in its discretion, including:

    1. All profits received by Defendants from sales and revenues of any kind made as a result of their unlawful actions;

    2. All damages sustained by Plaintiff as a result of Defendants' acts of trademark infringement; and

    3. All actual, compensatory, consequential, and other damages, including pre- and post-judgment interest thereon at the highest lawful rate, suffered as a result of Defendants' trademark infringement, in an amount to be proven at trial;

G. In lieu of any portion of the aforementioned damages, an award of statutory damages as provided by law;

H. Entry of an order granting Plaintiff such other and further relief as the Court deems just and proper.

//

//

//

BADDIEVILLE, INC.'S COMPLAINT

**DEMAND FOR A JURY TRIAL**

Pursuant to Rule 28(b) of the Federal Rules of Civil Procedure, Plaintiff requests a jury trial of all issues that may be tried to a jury in this action.

RESPECTFULLY SUBMITTED this 6th day of January, 2023.

**OMNI LEGAL GROUP**

/s/ Omid E. Khalifeh
Omid E. Khalifeh
Ariana Santoro
Attorneys for Plaintiff,
Baddieville, Inc.